[No. 3944.   Decided June 17, 1901.]

THE STATE OF WASHINGTON *on the Relation of S. E. Barr, Respondent,* v. JOHN D. ATKINSON, *as State Auditor, Appellant.*

STATES AND STATE OFFICERS — PAN-AMERICAN EXPOSITION COMMIS-SION — BOARD OF WOMEN MANAGERS — DUTIES — RIGHT TO SHARE IN APPROPRIATION.

Under Laws 1901, p. 129, § 3, which provides that the expenses incurred by the honorary members of the board of women managers of the Pan-American Exposition, "appointed from this state to attend said exposition, and who will work in conjunction with the commissioners to be appointed in collecting and caring for art in needlework, etc., and other exhibits to be displayed at said Pan-American exposition," be paid out of the fund appropriated by said act, the commissioners appointed to prepare an exhibit for this state cannot by dispensing with an exhibit of art in needlework deprive said honorary members of the right to work in conjunction with the commissioners in regard to "other exhibits," nor of the right to share in the appropriation therefor.

SAME — EXPENDITURE OF APPROPRIATION — VOUCHERS.

Section 3 of the act of March 15, 1901, which provides that the expenses incurred by the two honorary members of the board of women managers of the Pan-American Exposition appointed from this state shall "be paid out of said fund to be hereafter appropriated, and the auditor is hereby instructed to draw his warrant upon the treasurer for all expenses actually incurred upon the presentation of the proper vouchers therefor," is a complete provision in itself for the payment of such expenses, and the other sections of said act which provide that the appropriation shall be expended for expenses incurred by the commissioners "upon vouchers approved by the commissioners," or "upon the requisition of the state commission," approved by the state

auditor, are inapplicable to the expenses of said members of the board of women managers. (Mount, J., dissents).

Appeal from Superior Court, Thurston County.—Hon. OLIVER V. LINN, Judge. Affirmed.

*W. B. Stratton,* Attorney General, and *E. W. Ross,* Assistant Attorney General, for appellant.

*Allen Weir* and *M. G. Royal,* for respondent.

The opinion of the court was delivered by

HADLEY, J.—This cause was instituted in the superior court of Thurston county upon relator's petition praying for a writ of mandamus against the respondent, who is appellant here. The petition avers that the appellant is the duly elected, qualified, and acting state auditor of the state of Washington; that the legislature of the state of Washington duly passed an act entitled "An act to provide for the collection, exhibition and maintenance of the products of the state of Washington at the Pan-American Exposition at Buffalo, New York, and making an appropriation therefor," which act became a law on the 15th day of March, 1901 (Laws 1901, p. 129); that the relator and one M. L. T. Hidden were, on or about the 25th day of May, 1900, appointed as honorary members of the board of women managers of said Pan-American Exposition, which appointments were duly made by one William I. Buchanan, director general of said Pan-American Exposition, and said appointments were made upon the designation and recommendation of John R. Rogers, who was then the duly qualified and acting governor of the state of Washington; and that the relator and said Hidden then became, and ever since have been, and now are, duly appointed, qualified, and acting honorary members of the board of women managers of said exposition. It is further

alleged that under the provisions of the legislative act here-
inbefore mentioned it is provided that the expenses incur-
red by the two honorary members of the board of women
managers who have been appointed from this state to attend
said exposition must be paid out of the appropriation made
in said act, and that the state auditor was and is instructed
by the terms of said act to draw his warrants upon the
treasurer of said state for all expenses actually incurred
by the said honorary members in attending said exposition,
upon the presentation to him of the proper vouchers there-
for; that the relator and said Hidden are the two honorary
members referred to in said law whose expenses are re-
quired by the terms thereof to be paid out of the appro-
priation made therein; that on or about the 14th day of
April, 1901, at the city of Tacoma, in said state, a meeting
was duly held by the duly appointed members of the com-
mission provided for in said act; that the board composed
of said commissioners at such time and place was duly
organized and empowered to act under said law; that the
petitioner attended said meeting and offered to act in con-
junction with the members thereof in the discharge of her
duties mentioned in § 3 of said law; that the petitioner
was informed at said meeting by the said commissioners
that she would not be permitted to draw or use for her
expenses in attending said exposition any portion of the
appropriation created by said law, save and except a small
amount to cover the expenses of petitioner incurred on
and prior to said date; that said commission refused to
audit or allow any bill or voucher for petitioner out of the
said fund, other than as stated herein; that said commis-
sion, on said 14th day of April, adopted and spread upon
its minutes the following:

"On motion duly made, seconded and carried, the execu-
tive commissioner was instructed to inform the lady man-

agers heretofore referred to and mentioned in the Pan-American act that there is no space set aside or made available at Buffalo for the ladies' art and needle work exhibit, and therefore that it is the decision of the commission that it dispense with any and all efforts to make a distinctive art and ,needle work exhibit from the state of Washington at said exposition. And, after a full presentation and discussion of the matter, it was regularly moved, seconded and carried that it is the sense of the commission that no sum of money be permitted to be expended or appropriated for the use of the honorary members of the board of women managers for expenses from the state of Washington to Buffalo in attendance upon the Pan-American exposition."

That under the provisons of said law, and under the appointment of the petitioner, she is required to attend the said exposition in person in the city of Buffalo, which exposition is now open, and will be kept open and continue in carrying out the purposes for which it was created until the 1st day of November, 1901; that the duties of petitioner in connection therewith are and will be to represent the state of Washington, and to work in conjunction with the commissioners hereinbefore mentioned, in collecting and caring for and exhibiting the exhibits from said state of Washington to be displayed at said Pan-American exposition, and to represent the state upon the board of women managers thereof, so that the provisions of the law hereinbefore referred to may be carried into effect; that on the 25th day of April, 1901, the petitioner presented to the appellant a proper voucher for her necessary and reasonable expenses for transportation from Olympia, Washington, to Buffalo, New York, the amount thereof being the sum of $67.75, which amount is the correct amount required to purchase a ticket by railroad from the petitioner's city and residence to the point where said exposition will be held, and is a reasonable and necessary item of expense incurred and

paid by the petitioner for the purpose of attending said exposition; that said voucher consisted of a receipt of the agent at Olympia of the Northern Pacific Railroad company for said money, accompanied by the affidavit of the petitioner showing that said money had been paid for said purpose; that upon the presentation of said voucher to appellant, the petitioner demanded of and from him as said auditor a warrant upon the state treasurer, and against the appropriation created in said law in favor of petitioner, and for said amount; that the appellant thereupon refused and neglected, and does now refuse and neglect, to issue the warrant to petitioner as demanded for said sum, or for any portion thereof. Upon the above statement the petitioner prays that a writ of mandamus be issued, directed to and commanding appellant to issue and deliver to her the warrant demanded. A demurrer was interposed to the petition by appellant, which was overruled, and appellant's exception duly noted. Thereupon appellant refused to plead further, and judgment was entered that a peremptory and permanent writ be issued directing appellant to issue to relator a warrant upon the treasurer of said state against the appropriation referred to in the petition in the sum of $67.75, and that the relator recover from appellant her costs. From said judgment the defendant appeals.

Section 3 of the act approved March 15, 1901, includes the following provision:

"The expenses incurred by the two honorary members of the board of women managers, who have been appointed from this state to attend said exposition, and who will work in conjunction with the commissioners to be appointed in collecting and caring for art in needlework, etc., and other exhibits to be displayed at said Pan-American exposition be paid out of said fund to be hereafter appropriated, and the auditor is hereby instructed to draw his warrant upon the treasurer for all expenses actually incurred upon the presentation of the proper vouchers therefor."

It is urged by the appellant that, inasmuch as the commissioners appointed in pursuance of said act determined, as shown by the minutes of the meeting above mentioned, to dispense with an art in needlework exhibit at said exposition, there no longer remains any duty for said honorary members to discharge within the provisions of said law, and therefore no expense can be incurred by them which can be lawfully paid from said appropriation. It will be observed, however, that the above quoted portion of the section provides for the payment of the expenses incurred, not only in connection with "collecting and caring for art in needlework, etc.," but also in connection with "other exhibits to be displayed." It thus seems clear to us that it was the legislative intent that these honorary members should act in conjunction with the commission in relation to other exhibits. It is a reasonable deduction from the language of the statute quoted that the legislature intended to recognize the purpose for which such honorary membership was created, in the belief that such members could usefully discharge such duties as appropriately belonged to women in connection with an exhibit designed to represent the state of Washington in all phases pertaining to her material development and the enterprise of her people.

Appellant contends,—and, indeed, not without force,—that money can be drawn from said appropriated fund in three ways only, viz., under the provisions of §§ 2, 8, and 9 of the act of March 15th. Said sections are, respectively, as follows:

"Sec. 2. Each of the said commissioners hereby appointed shall serve without salary but is allowed his actual necessary expenses incurred in attending meetings of said board in the discharge of his duties to be paid out of the money hereby appropriated, upon vouchers approved by the commissioners."

"Sec. 8. Such commission may issue certificates of in-

debtedness with sworn vouchers attached thereto. All such certificates shall be presented to the auditor of the state, who shall issue warrants upon the treasurer of the state for the same providing that the certificates and warrants so drawn shall in no case exceed the amount hereafter appropriated."

"Sec. 9. To carry out the purposes and provisions of this act the sum of twenty-five thousand ($25,000) dollars is hereby appropriated out of any money in the treasury not otherwise appropriated. The state treasurer is hereby directed to pay the money to the executive commissioner from time to time upon the requisition of the state commission by its president and secretary and approved by the state auditor."

It will be observed that each of said sections requires the authority of the commission itself for payments from the fund appropriated, and there can be no doubt that all payments made for expenses incurred by the commission itself or the members thereof must be with the authority and approval of the commission. It becomes our duty, however, to interpret the statute so as to give force to all of its provisions, if the same can be made to consist one with the other. These so-called "honorary members" are not members of this commission. They were appointed by the director general of the Pan-American exposition, upon the recommendation of the governor of this state, as honorary members of the board of women managers of said exposition. Presumably, this was an honor and recognition extended to all the states, and, inasmuch as the members from this state had been appointed before the passage of the law above mentioned, the legislature clearly intended, by the provision of § 3 above set forth, to provide for payment of their expenses out of the fund appropriated by that act. The manner of payment is specifically outlined in the section, which provides that payments shall be made. It is a method restricted to the one purpose, and is

19—25 WASH.

wholly distinct from that provided in other sections for payment of expenses incurred by the commission itself, or by the members thereof. It is as follows:

"And the auditor is hereby instructed to draw his warrant upon the treasurer for all expenses actually incurred upon the presentation of proper vouchers therefor."

Appellant contends that the words "proper vouchers" must mean vouchers audited and approved by the commission. We believe, however, that the words refer only to such vouchers as shall satisfy the auditor that legitimate expenditure has been made, within the scope of the purpose stated in § 3, in relation to said honorary members. The auditor is left to exercise the same discretion with which he is vested when auditing claims against the state not required by law to be audited by other officers or persons. The auditor is given this general authority under § 134, subd. 1, Bal. Code. In the exercise of the auditor's discretion it is not to be presumed that any extravagant or unlawful expenditure will be approved by him. The voucher presented to him in this case was a railroad ticket from Olympia to Buffalo, accompanied by the affidavit of petitioner that she had purchased and paid the sum of $67.75 for it, for the purpose of providing her passage to Buffalo that she might attend the exposition as such honorary member. Her attendance at such exposition is expressly made a part of her duties in the law, and, if she acts in conjunction with the commission from this state, the reasonable expenses of such attendance are to be paid. The petition shows that she is endeavoring to act in conjunction with the commission by preparing to go to Buffalo for that purpose, and, since the expense of transportation is a necessary incident to her attendance, she is entitled to a warrant for the amount shown.

Since this cause was submitted in this court, the legisla-

ture of this state, while convened in special session, did, on June 12, 1901 (Ex. Sess. Laws 1901, p. 14), pass an act amending § 3 of the act of March 15th aforesaid.   Said amendatory act contains an emergency clause, and was approved by the governor on June 13, 1901.   Said last-named act having now become a law, this court must take judicial cognizance of its existence.   The amendment contains substantially the same provisions as the original § 3, with the omission of all that portion relating to payment of the expenses of said honorary members.   The amendment, therefore, repeals the aforesaid provision of the original § 3, and no provision is now left for the payment of future expenses incurred by said honorary members.   The expense shown by the record in this case was incurred, however, during the existence of the former provision of the law.   Relying upon the law, the petitioner incurred the expense in good faith, and an obligation was thereby cast upon the state to pay the same from said fund.   The right to enforce such obligation existed in her favor against the state when the repealing act became a law, and such right cannot be thereby taken away.

The judgment of the lower court is affirmed, with costs taxed against appellant.

REAVIS, C. J., and ANDERS, DUNBAR and WHITE, JJ., concur.

FULLERTON, J., dissents.

MOUNT, J. (dissenting).—I dissent for the reason that the whole act should be construed together.   The term "proper vouchers," as used in § 3 thereof, means vouchers approved by the president and secretary of the commission, as required by § 9.   Until such voucher, so approved, is presented to the state auditor, no writ should issue against him.